IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TERRON BROWN,<br><br>Plaintiff,<br><br>vs.<br><br>SHAUN SETTLES, TSCI Warden; APRIL BULLING-JUNE, TSCI Deputy Warden; MEGAN CRUICKSHANK, TSCI Associate Warden; and NEBRASKA DEPARTMENT OF CORRECTION SERVICE, State Agency;<br><br>Defendants. | **8:25CV608**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiff Terron Brown's ("Brown" or "Plaintiff") Complaint. Filing No. 1. Brown also filed a Memorandum in Support of his Complaint, Filing No. 2, which the Court construes as a supplement to the Complaint. Brown is an inmate currently confined in the Tecumseh State Correctional Institution ("TSCI") in Tecumseh, Nebraska. Filing No. 1 at 2. The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(b).

## I. SUMMARY OF COMPLAINT

Brown brings this action under 42 U.S.C. § 1983 against Shaun Settles, the TSCI Warden; April Bulling-June, TSCI Deputy Warden; Megan Cruickshank, TSCI Associate Warden; and the Nebraska Department of Correctional Services ("NDCS"). Filing No. 1 at 2-3. Brown is housed in the Special Management Unit ("SMU") at TSCI. Filing No. 2 at 5. Brown describes the SMU as the most restrictive unit in the NDCS system. *Id.* at 5. After entering the SMU, Brown began challenging his living conditions and filing

institutional grievances alleging that prison officials were violating their own policies and procedures. *Id.* at 6.

On July 9, 2025, Brown ordered a book titled *Battling the Administration: An Inmate's Guide to a Successful Lawsuit* (the "Book"). *Id.* at 11. Brown ordered the Book from Freebird Publishing, an approved vendor for TSCI. *Id.* According to Brown, the publisher's advertising material asserts that the Book "guides readers through the complex U.S. civil court system, teaches them how to pursue a lawsuit in the face of the constraints imposed by incarceration, and enables a successful outcome for the prisoner's civil rights." *Id.*

On July 17, 2025, the Book was delivered to the TSCI mailroom, but was immediately confiscated and held at the instruction of Deputy Warden Bulling-June. *Id.* at 11. On July 19, 2025, Brown received a "Notice of Held Mail" (the "Notice"), stating that the book violated "Policy 205.01.01 pg. 4, B4," (the "Policy"). *Id.* at 12. The Policy states that publications are contraband when they are "deemed by the Warden to constitute a threat to the safety, security, or good order of the facility." *Id.* at 14. The Notice stated that the Warden deemed the Book a "Safety/Security threat due to size/weight." *Id.* at 12. Brown alleges the Book is a 566-page soft-cover book sized at 8.5 inches x 1.28 inches x 11 inches. *Id.* at 14.

On the same day he received the Notice, Brown initiated the institutional grievance process. *Id.* at 12. Brown argued that prison officials violated his First Amendment right to free speech and challenged the size/weight rationale as lacking any rational connection to safety or security. *Id.* On July 30, 2025, a prison official responded to Brown's informal

grievance, stating that Deputy Warden Bulling-June made the decision to hold the Book and that Brown could ask the Warden to review the decision. *Id.*

On July 30, 2025, Brown escalated to a Step-One grievance, requesting that Warden Settles intervene and reverse the censorship decision. *Id.* at 12-13. On August 8, 2025, Associate Warden Cruickshank responded to Brown's Step-One grievance by stating, "This grievance is being returned to you unanswered as this issue has been answered in a previous grievance." *Id.* at 13. Cruickshank's response also closed out the grievance. *Id.* Brown alleges that because Cruickshank electronically closed out the grievance, Brown was unable to appeal the Step-Two grievance process. *Id.* Thus, according to Brown, the original decision to confiscate the Book has not been reviewed by anyone other than the censor. *Id.* at 8.

Construed liberally, Brown asserts two causes of action. First, he alleges his First Amendment rights to freedom of speech were violated when Bulling-June ordered that the Book be confiscated. Filing No. 1 at 5. Second, Brown alleges his due process rights were violated when Cruickshank prematurely closed Brown's grievance process. *Id.* Brown seeks a declaratory judgment stating Bulling-June and Cruickshank violated his rights. *Id.* He also seeks a declaratory judgment stating that Settles' inaction led to a dereliction of duty, and that the NDCS is liable for the actions of its employees. *Id.* Brown seeks $10,000 in damages against each individual defendant, and $30,000 in damages against the NDCS. *Id.*

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to

determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III. DISCUSSION OF COMPLAINT

Liberally construing Brown's Complaint, this is a civil rights action brought under 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting

under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). For the reasons stated, Brown's claims must be dismissed against the NDCS and against the other Defendants in their official capacity. The Court reviews each of Brown's individual capacity claims.

**A. Claims Against NDCS**

Brown's claims against the NDCS are barred by the Eleventh Amendment. States or governmental entities that are considered arms of the state are not suable "persons" within the meaning of 42 U.S.C. § 1983, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989), and suits for money damages against the state or its agencies are barred by the Eleventh Amendment. *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (Eleventh Amendment bars suit against state agency for any kind of relief); *Nix v. Norman*, 879 F.2d 429, 431-32 (8th Cir.1989) (suit brought solely against state or state agency is proscribed by Eleventh Amendment); *see also* *Brown v. Arkansas Dep't of Human Servs.*, 452 F. App'x 690, 693 (8th Cir. 2011) (unpublished) (plaintiff's § 1983 claims against state agency barred by Eleventh Amendment). Accordingly, the NDCS must be dismissed for failure to state a claim upon which relief can be granted.

**B. Official Capacity Claims**

Brown's claims against each Defendant in his or her official capacity would be a suit against the State of Nebraska. *See* *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("A suit against a public employee in his or her official capacity is merely a suit against the public employer."). The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g.,* *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618–19 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d

442, 446–47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., Dover Elevator Co.*, 64 F.3d at 444; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). Through partly phrased as seeking a declaratory judgment, Brown seeks solely monetary relief against each individual Defendant for alleged past violations of Brown's constitutional rights. There is nothing in the record before the court showing that the State of Nebraska waived, or that Congress overrode, sovereign immunity in this matter. Thus, Brown's official capacity claims are barred by the Eleventh Amendment and must be dismissed.

**C. First Amendment Claim**

Brown's First Amendment claim asserts that Bulling-June violated his right to Free Speech when confiscating the Book. Prison inmates "do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). These protections include a prisoner's rights under the First Amendment. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974). However, a prison can limit these rights with restrictions that are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *e.g.*, *Hamilton v. Schriro*, 74 F.3d 1545, 1550 (8th Cir.1996), cert. denied, 519 U.S. 874 (1996) (applying *Turner* standard to prisoner's free exercise claim). Liberally construed, Brown's First Amendment claim rests on his right to receive information through the mail. *See Beard v. Banks*, 548 U.S. 521, 528 (2006); *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989). Under *Turner*, several factors are considered when evaluating the reasonableness of a prison regulation or

policy: (1) whether there is a valid, rational connection between the regulation and the asserted governmental interest; (2) whether alternative means for exercising the right remain open to the prisoner; (3) the impact of the regulation on prison staff, other inmates, and the allocation of prison resources; and (4) the availability of ready alternatives to the regulation. *Turner*, 482 U.S. at 89–91.

For purposes of initial review, Brown has alleged sufficient facts to question whether there is a rational connection between the stated rationale for confiscating the Book and a legitimate penological interest. Brown alleges that Bulling-June confiscated the Book because it posed a safety or security threat due to its size and weight. Brown also alleges that the TSCI "Mission Specific Housing Overview Handbook" expressly permitted SMU inmates to possess "[l]egal materials including books" in a space "measuring two cubic feet (12"x12"x24") in the living areas." Filing No. 2 at 14. Brown alleges the Book measured at 8.5" x 1.28" x 11" and was thus within the size limits. *Id.* at 15. Brown further alleged that the Book was not outside the norm of other books in inmates' possession at TSCI.

According to Brown, Bulling-June confiscated the Book under Policy 205.01.01(B4), which includes as contraband "[a]ny other printed, published or photographed materials that are deemed by the Warden to constitute a threat to the Safety, Security, or good order of the Facility." Filing No. 2 at 14. Brown asserts that using this "catch-all policy" shows pretext because 205.01.01(B4) makes no reference to weight and size. Filing No. 2 at 9. Brown thus alleges that the Book was within the size/weight requirements for legal materials, but Bulling-June confiscated the Book using pretextual "catch-all" language from the Policy. Given the liberal construction afforded

to pro se pleadings, the Court concludes these allegations are sufficient to support the first *Turner* factor. *See Thornburgh*, 490 U.S. at 415 (noting that prison regulations restricting First Amendment rights must "operat[e] in a neutral fashion, without regard to the content of the expression." (quoting *Turner*, 482 U.S. at 90)); *see also Calhoun v. Corrections Corp. of Am.*, 2010 WL 3862828, at *11–12 (D. Minn. July 16, 2010) (finding First Amendment violation where stated reasons for denying books contradicted applicable prison policies).

Brown also alleges sufficient facts to support the second *Turner* factor. He alleges that his access to the law library as an SMU inmate is limited to one hour per week and that this hour is frequently canceled. *See* Filing No. 2 at 15-16. These allegations, taken as true, are sufficient for purposes of initial review, to allege that meaningful alternative means of accessing the same legal information were not readily available to him.

At this stage, the third and fourth *Turner* factors do not weigh against Brown. He alleges the book was ordered from an approved vendor and fell within NDCS's own authorized size limits for legal materials. Moreover, his allegations are sufficient to suggest that alternatives to confiscation may have been available. While "courts owe substantial deference to the professional judgment of prison administrators," *Banks*, 548 U.S. at 528 (internal citations and quotations omitted), the allegations at this stage "could warrant a determination in his favor." *Id.* at 525. Accordingly, liberally construed, the Court finds that Brown's allegations are sufficient to nudge his First Amendment claim across the line from conceivable to plausible.

**D. Due Process Claim.**

Brown alleges his Due Process rights were violated when Cruickshank closed out Brown's grievance before Brown had a chance to appeal it. However, "[i]nmates do not have a constitutionally protected right to a grievance procedure." *Hildebrand v. Kugler*, No. 1:19-CV-01006, 2019 WL 2134622, at *1 (W.D. Ark. May 3, 2019), *report and recommendation adopted*, No. 1:19-CV-1006, 2019 WL 2130152 (W.D. Ark. May 15, 2019) (quotation and citation omitted) (collecting cases). "Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the . . . grievance procedure is not actionable under § 1983." *Id.*; *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (holding that allegations regarding actions of prison officials in handling prisoner's grievances were insufficient to state a constitutional claim). Though his allegations may excuse Brown from procedural requirements, he may not pursue a free-standing constitutional claim based solely on his inability to complete the grievance process. *See Ross v. Blake*, 578 U.S. 632, 644 (2016) (a prison administrative remedy is "unavailable," thereby excusing the exhaustion requirement, when prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation").). Accordingly, Brown's Due Process claim must be dismissed.

**E. Dereliction of Duty**

Though not stated as a separate cause of action, Brown alleges that Settles' failure to intervene resulted in a dereliction of duty. However, even if prison policies and procedures were not followed in this instance, or if the Policy application violated Brown's First Amendment rights, the warden cannot be held vicariously liable under § 1983. "[A]

warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Dahl v. Weber*, 580 F.3d 730, 733 (8th Cir. 2009) (quoting *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987)). Prison supervisors cannot be held liable under § 1983 on a theory of respondeat superior. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). Accordingly, to the extent Brown asserts claims against Settles in his individual capacity, such claims must be dismissed.

## IV. CONCLUSION

Brown's claims against NDCS and Defendants in their official capacities must be dismissed as they are barred by sovereign immunity. Brown's claims against Cruickshank and Settles in their individual capacities must also be dismissed for failure to state a claim for relief. Brown's Complaint and Supplement sufficiently state a claim for relief for violations of Brown's First Amendment rights based on the confiscation of the Book, and that claim will be allowed to proceed to service of process against Bulling-June in her individual capacity. However, the Court cautions Brown that this is only a preliminary determination based on the allegations found within the Complaint and Supplement. This is not a determination of the merits of Brown's claims or potential defenses thereto.

IT IS THEREFORE ORDERED that:

1. Plaintiff's First Amendment claim against Defendant April Bulling-June, in her individual capacity, may proceed to service of process.

2. Plaintiff's claims against NDCS, his claims against Defendants in their official capacities, and all remaining claims are dismissed without prejudice. The Clerk of Court is directed to terminate Nebraska Department of Correctional Services, Megan Cruickshank, and Shawn Settles as defendants to this action.

3. For service of process on Defendant April Bulling-June in her individual capacity, the Clerk of the Court is directed to complete a summons and USM-285 form for Defendant Bulling-June using the following address:

Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509.

4. The Clerk of Court is further directed to complete a second set of summons and USM-285 forms for Defendant April Bulling-June in her individual capacity using the following address:

Nebraska Department of Correctional Services
Tecumseh State Correctional Institution
2725 Hwy 50
Tecumseh, NE 68450.

5. The Clerk of the Court shall forward the summons forms and USM-285 forms together with sufficient copies of the Complaint, Filing No. 1, Supplement, Filing No. 2, and this Memorandum and Order to the United States Marshals Service.

6. The Marshals Service shall serve Defendant April Bulling-June in her individual capacity by "leaving the summons at the office of the Attorney General with the Attorney General, deputy attorney general, or someone designated in writing by the Attorney General, or by certified mail or designated delivery service addressed to the office of the Attorney General." Neb. Rev. Stat. § 25-510.02(1) (prescribed method for serving the State of Nebraska or any state agency); *see also* Federal Rule of Civil Procedure 4(j)(2); Neb. Rev. Stat. § 25-511 ("Any employee of the state, as defined in section 81-8,210, sued in an individual capacity for an act or omission occurring in connection with duties performed on the state's behalf, regardless of whether the

employee is also sued in an official capacity, must be served by serving the employee under section 25-508.01 and also by serving the state under section 25-510.02.”).

7. The Marshals Service shall also serve Defendant April Bulling-June in her individual capacity by certified mail or other authorized method of service at the address indicated above. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (prescribed method for serving an individual).

8. For service by certified mail or designated delivery service, the Marshals Service shall send the summons to Defendant within ten days of the Clerk of the Court issuing and forwarding the summons to the Marshals Service. *See* Neb. Rev. Stat. § 25-505.01(1).

9. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.[1]

10. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the Court’s own motion, an extension of time until 90 days from the date of this order to complete service of process.

11. Plaintiff is hereby notified that failure to obtain service of process on the Defendant within 90 days of the date of this order may result in dismissal of this matter

[1] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, “[t]he officers of the court shall issue and serve all process, and perform all duties in such cases.” *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory). *See, e.g.*, *Beyer v. Pulaski County Jail*, 589 Fed. Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant’s last-known contact information where plaintiff contended that the Jail would have information for defendant’s whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant’s current address).

without further notice. A defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

12. The Clerk of Court is directed to set a case management deadline in this case with the following text: **November 12, 2026**: service of process to be completed.

13. The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this Court. Plaintiff shall keep the Court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

Dated this 13th day of August, 2026.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge